CHAS. A. JOHNSON & CO. v. UNITED STATES (No. 3183) [1]

United States Court of Customs and Patent Appeals, June 11, 1929

*Walden & Webster* (*Walter F. Welch* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.

[Oral argument May 14, 1929, by Mr. Welch and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and GARRETT, Associate Judges [2]

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court in reappraisements Nos. 81766–A and 84268–A.

The merchandise involved consists of "bowl paper." It was invoiced at 8.57 pence per pound, entered at 9.25 pence per pound, and appraised at 10.5 pence per pound.

The importers appealed to reappraisement.

On the trial before the associate justice, sitting in reappraisement, evidence was submitted by the importer for the purpose of establishing that the dutiable value was less, or, in any event, not greater, than the entered value. The only evidence of foreign value submitted by the importer is that contained in an affidavit of the secretary of the manufacturers and exporters of the merchandise.

He said:

\* \* \* Yates Duxbury & Sons (Ltd.), sell bowl paper to Messrs. Charles A. Johnson & Co., 25 Walker Street, New York, and I further declare that the net selling price to them is the actual net selling price by us to other customers in the home market.

---

[1] T. D. 43432.
[2] LENROOT, Judge, did not participate in this decision, the case having been argued before he took his seat.

In further evidence, I attach herewith copies of invoices showing the net price charged to:

Messrs. David Bentley (Ltd.), Greengate, Salford.
Messrs. Richard England (Ltd.), Brown Street, Salford.
Messrs. Jackson & Brother (Ltd.), Wharf Foundry, Bolton.

With reference to export value, James F. Hurley, one of the officers of the importing company, testified that his company paid the price stated in the invoice. He further testified as follows:

Q. Now, did you bring down with you, Mr. Hurley, the contract you had with Yates Duxbury & Sons (Ltd.)?—A. I had no contract, except a gentleman's arrangement, and that arrangement has been going on for 75 years with the predecessor of my present concern.

Q. And that agreement is, that Yates Duxbury & Sons (Ltd.) will not sell to anybody but your concern?—A. That is the agreement as far as I understand.

Q. And by reason of that fact you got a special discount of 7½ per cent?— A. In order to compensate us for the advertising and taking care of our expenses for trying to make a market, and preserving and checking up on infringements on that quality of paper.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Justice Fischer. Are you the only purchaser of this class of goods in this country?

The Witness. I have an arrangement as a direct merchant and buyer, but they have been sending to other English dealers who have shipped to America, and in that way I am not the exclusive agent which I had hoped to be for the sale of their product.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Q. You do not know of any one dealer in England who would buy a 50-ton quantity, do you?—A. A dealer might, but I don't know of any dealer who would handle it; I don't know of any other dealer in the United States or anywhere who handles that class of paper; it is a special.

The Government offered in evidence a report of a customs attaché, dated September 20, 1927. It appears in the record as Exhibit 3, and contains a general reference to an alleged syndicate composed of buyers of this merchandise in England. With reference to sales of the merchandise abroad the report contains the following:

I beg to state that no sales of the merchandise in question has been made to anyone, in any country, not a member of the syndicate referred to, subsequent to the formation of said syndicate.

\*　　\*　　\*　　\*　　\*　　\*　　\*

However, a request for a quotation of the paper in question was made by a firm not in the combine, and I forward herewith as Exhibit "B" the said original request. Forwarded herewith as Exhibit "C" is the Yates Duxbury & Sons, Limited, copy of their answer to said request. In this letter they quote a price of "10½d. per lb. net delivered."

The pertinent part of Exhibit C referred to in this report is as follows:

Messrs. Edward Barlow, Limited, Manchester.

Dear Sirs: We are in receipt of yours of the 9th inst., and thank you for your enquiry for Woolen Bowl Paper as per your sample.

In reply we have pleasure in offering you our Woolen, as per sample enclosed, quality in all respects to previous deliveries, for which our price would be 10½d. per lb. net delivered.   *   *   *

Upon this record the trial court affirmed the appraised value, and, upon appeal, its judgment was affirmed by the appellate division of the Customs Court.

It is contended by counsel for appellants that there is no substantial evidence in the record to support the findings and the judgment of the court below.   It is argued by counsel that Exhibit C, attached to the report of the customs attaché (Exhibit 3), is insufficient to establish a foreign value of the merchandise.

Due to the peculiar state of the record we think it advisable to state the attitude of counsel for appellants in his language.   We quote from his brief:

If the price at which the goods were sold abroad is not to be regarded as market value, *because it is sold to parties who have clubbed together and secured a price of 8½ pence a pound on an agreement to take 50 tons during the year,* then the importers' price of 8.57 pence per pound, must be regarded as export value.   At all events, the importer is bound by his entered value of 9¼ pence, which is equal to or higher than the export value and, therefore, should have been sustained.   (Italics ours.)

On the other hand, counsel for the Government contends that the evidence offered by the Government is sufficient to sustain the findings of fact and the judgment of the court below.

The only evidence offered by appellants to establish that the foreign value of the merchandise was 8½ pence per pound is that contained in Exhibit 1, *supra.*   It is sufficient to say in this connection that there is nothing in this exhibit nor in the invoices attached thereto to establish foreign value.   It does not appear that the price referred to therein is the market value or the price at which such or similar merchandise was *freely offered for sale to all purchasers* in the principal markets of the country of exportation in the usual wholesale quantities and in the ordinary course of trade, as required by section 402 (b) of the Tariff Act of 1922.   What has just been said applies with equal force to the report of the customs attaché— Exhibit 3.   Furthermore, in view of the statement of the witness Hurley that for 75 years the importing company has had an arrangement with the manufacturers of the merchandise in question, providing that all sales to the United States shall be made to the appellants, the price paid by the appellants for the merchandise is no evidence whatever of export value.   It is true that the witness does say that the manufacturers have been "sending to other English dealers who have shipped to America and in that way I am not the exclusive agent which I had hoped to be for the sale of their product"; but this statement does not refer to the price paid by those purchasers, so that, even if it might be argued that this merchandise is

sold to others in the United States, there is, nevertheless, no evidence of the price or prices paid by them. We are of opinion, therefore, that there is no substantial evidence of either foreign or export value. No attempt was made to establish either the United States value or the cost of production. As the importers failed to introduce any substantial evidence relevant to the issues in the case, the appeal should have been dismissed by the trial court. *Meadows, Wye & Co., Inc., et al.* v. *United States*, 17 C. C. P. A. 36, T. D. 43324.

However, in view of the fact that counsel for the parties, as well as both the trial and appellate courts below, proceeded upon the theory that a foreign value had been established, we think the interests of justice require that the cause be remanded for a new trial, and such will be our holding.

The judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.